UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANFORD HEALTH CARE,<br><br>    Plaintiff,<br><br>    v.<br><br>USABLE MUTUAL INSURANCE COMPANY,<br><br>    Defendant. | Case No. 21-cv-00550-PJH<br><br>**ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 24, 28 |

Defendant USAble Mutual Insurance Company's ("defendant") motion to dismiss (Dkt. 24) plaintiff Stanford Health Care's ("plaintiff") first amended complaint ("FAC") and motion to strike (Dkt. 28) came on for hearing before this court on July 1, 2021. Plaintiff appeared through its counsel, Jennifer Jiao. Defendant appeared through its counsel, Jason Wu and Michael Naranjo. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby **GRANTS** the motion to dismiss **WITH PREJUDICE** and **GRANTS IN** and **PART DENIES IN PART** the motion to strike.

**BACKGROUND**

Plaintiff is a non-profit hospital that principally operates in Northern California. Dkt. 23 (FAC) ¶ 1. Title 42 U.S.C. § 1395dd requires plaintiff to treat any person brought to its hospital with emergency medical conditions. Id. ¶ 9. Plaintiff must do so until the patient is stable for transfer or discharge. Id. Defendant is an insurance company with its principal place of business in Arkansas. Id. ¶ 2. Defendant "arranges for the provision of health care services to its enrollees and/or pays for or reimburses part or all of the costs

for those services." Id.

On January 22, 2021, plaintiff filed the instant lawsuit against defendant. Dkt. 1. In its operative FAC, plaintiff alleges a claim for breach of implied in fact contract and, alternatively, a claim for quantum meruit. FAC ¶¶ 15-42. Plaintiff seeks to recover over $100,000 for medical services that it provided to an unidentified patient, T.H., in November 2018. Id.

On May 4, 2021, defendant filed the instant Rule 12(b)(6) motion to dismiss. Dkt. 24. In it, defendant asserts that the two-year statute of limitations bars plaintiff's claims. Id. at 10-11. Alternatively, defendant argues that plaintiff fails to allege sufficient facts to state a claim. Id. at 11-15.

In support of its opposition to that motion, plaintiff proffers two declarations. The first declaration comes from plaintiff's outside counsel, Jennifer Jiao ("Jiao"). Dkt. 26-1. As part of her declaration, Jiao includes an excerpt of certain portions of defendant's website (the "website exhibit"). Dkt. 26-3. The second declaration comes from plaintiff's Director of Patient Financial Services, Antonio Fonseca ("Fonseca"). Dkt. 26-2. The court will collectively refer to the Jiao declaration, the Fonseca declaration, and the website exhibit as the "challenged materials."

On May 25, 2021, defendant filed the subject motion to strike. Dkt. 28. In it, defendant asserts that the court should not consider the challenged materials when deciding the motion to dismiss. Id.

As detailed below, the court concludes that the statute of limitations bars plaintiff's claims. Given that, the court need not decide whether plaintiff alleged sufficient facts to state a claim. The court will detail only the factual allegations, communications, and challenged materials that are necessary to decide the statute of limitations defense.

I. **T.H.'s Hospital Stay, Treatment, and Insurance**

On November 5, 2018, an ambulance brought T.H. to plaintiff's emergency department. FAC ¶ 10. Plaintiff treated T.H. for numerous emergency medical conditions, including suicidal ideations and mood disorder. Id. On November 6, 2018,

2

plaintiff admitted T.H. to its hospital.  Id.  On November 27, 2018, plaintiff discharged T.H.  Id. ¶ 24.  Between November 5, 2018 and November 27, 2018, plaintiff provided T.H. with "medically necessary emergency and post-stabilization services."  Id. ¶ 10.  Plaintiff alleges that, as of November 2018, T.H. was an enrolled member of a health plan sponsored by defendant.  Id. ¶ 11.

**II.     The Relevant Communications**

On November 23, 2018, T.H. provided plaintiff with an insurance card issued by defendant.  Id. ¶ 21.  That day, plaintiff called third-party Anthem Blue Cross ("Anthem") to verify T.H.'s eligibility under defendant's plan.  Id.   An Anthem representative informed plaintiff that T.H. had mental health coverage with defendant "that is administered by New Directions Behavior Health."  Id.  For brevity, the court will refer to the latter entity as "New Directions."

On November 26, 2018, plaintiff called defendant.  Id. ¶ 22.  In relevant part, a defendant representative "confirmed" that T.H. had active coverage through defendant and "advised" plaintiff that T.H.'s "mental health benefits go through authorization by [New Directions] but that claims are processed by [Anthem]."  Id.

On November 27, 2018, the same day as plaintiff's discharge, a New Directions representative contacted plaintiff.  Id. ¶ 24.  The representative "advised" plaintiff that it "will receive a denial letter for [T.H.] due to late admission notification but that [plaintiff] can immediately appeal the denial and the appeal will be processed by [defendant]."  Id.

That same day, New Directions sent plaintiff a letter (the "November 27, 2018 letter").  Id.  In its letter, New Directions states in part "that it is denying benefits for [T.H.'s] inpatient treatment at [plaintiff's hospital] for lack of authorization prior to treatment."  Id.  Defendant attaches the November 27, 2018 letter to its opening brief.  Dkt. 24-2 at 7-10.  Plaintiff does not disagree that the FAC incorporates that letter by reference.  The court will detail and consider the letter's contents its analysis below.

Later that same day, plaintiff called defendant.  FAC ¶ 25.  During that call, plaintiff "requested an urgent appeal for [T.H.'s] claim."  Id.  A defendant representative "advised"

3

1 plaintiff that "an appeal has to be initiated through [Anthem] and it will be forwarded to
2 [defendant]." Id.
3 On December 22, 2018, plaintiff "submitted its claim for [T.H.] to [Anthem] for
4 processing." Id. ¶ 26. Plaintiff alleges that a contract between it and Anthem required
5 such submission for plaintiff's claim to "be appealed." Id. While plaintiff alleges that
6 defendant was subject to that contract by virtue of defendant's status as a participant in
7 Anthem's so-called "Blue Card Program," plaintiff does not allege that defendant was a
8 party to the Anthem contract. Id. ¶¶ 16-19.

On January 22, 2019, Anthem issued a Remittance Advice ("RA") notice. Id. ¶ 29. The RA notice detailed plaintiff's "entire bill for [T.H.] under Covered Charges" but "documented that [T.H.'s] primary plan (i.e., [defendant]) . . . allowed $0.00 reimbursement." Id. On February 28, 2019, plaintiff "initiated an appeal, requesting payment for the medically necessary services rendered to [T.H.]." Id. ¶ 30.

On March 21, 2019, defendant issued a letter denying the February 28, 2019 appeal. Id. Almost two years later, this action followed.

## DISCUSSION

### III. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010).

As a general matter, the court should limit its Rule 12(b)(6) analysis to the contents of the complaint, although it may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("a court can

4

consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document"). The court may also consider matters that are properly the subject of judicial notice, Lee v. City of L.A., 250 F.3d 668, 688–89 (9th Cir. 2001), exhibits attached to the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims, United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

**IV.     Analysis**

California law imposes a two-year statute of limitations on "any action upon a contract, obligation or liability not founded upon an instrument of writing." Cal. Code Civ. Pro. § 339. This rule applies both to claims for breach of implied in fact contract, Barton v. New United Motor Mfg., Inc., 43 Cal. App. 4th 1200, 1206 (1996), and quantum meruit, Vishva Dev, M.D., Inc. v. Blue Shield of California Life & Health Ins. Co., 2 Cal. App. 5th 1218, 1223 (2016) ("Vishva Dev"). "Generally, the statute of limitations commences when a party knows or should know the facts essential to the claim." Id.

In its opposition, plaintiff does not disagree about the applicability of these rules to its claims. Instead, the parties contest when the statute of limitations commenced. Defendant asserts that that period began on November 27, 2018, when New Directions sent its letter. Dkt. 24 at 10 n.1. Plaintiff, on the other hand, asserts that that period did not begin until January 22, 2019, when Anthem sent its RA notice. Dkt. 26 at 10.

The critical question, then, is whether plaintiff "knew or should have known" the facts essential to its claims following its receipt of the November 27, 2018 letter. Although the parties disagree about Vishva Dev's meaning, they agree that that decision controls this question. Compare Dkt. 24 at 11 with Dkt. 26 at 9-10.

In Vishva Dev, the Court of Appeal reviewed the trial court's determination that California Code of Civil Procedure § 339's two-year statute of limitations barred a healthcare provider's quantum meruit claim against two insurers for their failure to pay for emergency services rendered by the providers to the insurers' enrollees. 2 Cal. App. 5th

at 1220. The court affirmed that determination. Id. at 1226. It found that certain written "Explanation of Benefit" ("EOB") notices sent by the insurers to the providers more than two years before the provider filed suit "unequivocally stated" that the insurers "would not pay [the provider's] bills" or, with respect to one patient, "only a portion of [the provider's] bills." Id. at 1223-24. Based on those statements, the court held that the subject EOB notices "all put [the provider] on notice that its claims for payments were being denied in part or in whole, which was the essential fact of [the provider's] quantum meruit claims." Id. at 1224.

This court construes Vishva Dev as standing for the proposition that, under California law, a provider should know the facts essential to any claim against an insurer for its provision of emergency medical services when an insurer issues a writing that unequivocally states its denial of the provider's request that the insurer pay for such services. With that point of law clarified, this court finds that the November 27, 2018 letter provided such unequivocal denial. Three aspects of that letter support this finding.

First, at the letter's first paragraph, New Directions states that it "performs managed behavioral health care services **on behalf of** [defendant]." Dkt. 24-2 at 7 (emphasis added). This statement indicates that New Directions acted as defendant's agent concerning the coverage requested and represented such status to plaintiff during their communications.

Second, at its second paragraph, the letter states that it "confirms that New Directions is **denying benefits** for Inpatient treatment provided on [redacted dates] at Stanford University Medical Center." Id. (emphasis added). The letter then states that "[o]ur information indicates: Pre-certification for the care requested was not obtained as required in the member's benefit plan." Id. At its third paragraph, the letter further characterizes its statements as a "denial." Id. ("You have a right to request a copy of your benefits . . . and copies of all documents relevant to the **denial**.") (emphasis added). These statements show that defendant, acting through New Directions, refused to provide benefits for T.H.'s treatment during the subject period.

6

Third, when outlining the appeal process at its third paragraph, the letter characterizes itself as a "decision." Id. at 7 ((("If you . . . choose[] to appeal ***this decision***, the appeal may . . .") (emphasis added). The letter repeats this characterization at its final paragraph. Id. at 8 ("If you would like to speak to someone about this ***decision***, you may . . .") (emphasis added). These characterizations show that the letter's denial served as a final determination by defendant concerning the coverage requested. Thus, for the above three reasons, the court finds that the November 27, 2018 letter served as an "unequivocal denial" by defendant of plaintiff's request to pay for the treatment rendered by plaintiff to T.H. Because plaintiff filed suit on January 22, 2021, the court concludes that the two-year statute of limitations bars its claims.

In its opposition, plaintiff challenges this conclusion on three grounds. First, plaintiff asserts that the November 27, 2018 letter was a "denial of authorization," not a "denial of payment." Dkt. 26 at 9. Relying on the Fonseca declaration, plaintiff suggests that, as a matter of industry practice, defendant could deny payment only if it issues one of three healthcare UB-04 forms—namely, an EOB, an RA, or an "explanation of coverage" ("EOC"). Dkt. 26 at 10. Second, plaintiff asserts that defendant could not have denied payment on November 27, 2018 because, as of that date, plaintiff "had not even billed [defendant] for services rendered to [T.H.]." Id. Thus, plaintiff rhetorically says, "how can payment be denied if there is no bill submitted?" Id. Third, plaintiff asks the court to "estop" any statute of limitations defense because defendant required plaintiff to "undertake methods of resolution prior to filing legal action." Id. at 10.

None of these counterarguments alters the court's conclusion. Plaintiff's first counterargument rests on the merit of the distinction between a denial of "authorization" and a denial of "benefits." Other allegations undermine that distinction's merit. At paragraph 24, plaintiff refers to the November 27, 2018 letter as "denying ***benefits*** for [T.H.'s] inpatient treatment . . . ***for lack of authorization*** prior to treatment." Id. ¶ 24 (emphasis added). At paragraph 25, plaintiff alleges that, immediately following its receipt of the November 27, 2018 letter, plaintiff "requested an urgent appeal for Patient

7

T.H.'s *claim*." Id. ¶ 25 (emphasis added). By plaintiff's own allegation, then, the November 27, 2018 letter denied "benefits" and denied a "claim." Critically, neither allegation says anything about denying "authorization." Instead, as shown by the bolded language in paragraph 24, it was the *absence* of pre-treatment authorization that compelled the November 27, 2018 letter's denial of benefits.

At oral argument, plaintiff failed to explain how or why T.H.'s insurance "benefits" are any different than "payment." That explanation is particularly important when, as here, a discharged enrollee has already received the treatment at issue. Plaintiff also failed to explain how a tendered "claim" is different than a request for "payment." In fact, at paragraph 22 (the precise paragraph that plaintiff relies on to support its proffered distinction), plaintiff alleges that T.H.'s "mental health benefits go through authorization by [New Directions] but *claims* are processed by [Anthem]." FAC ¶ 22 (emphasis added). Interestingly, when citing that same paragraph in its opposition, plaintiff replaces the word "claim" with "payment and processing." Dkt. 26 at 9 ("In fact, a [defendant] representative advised that [New Directions] only had the ability to authorize services *but that processing and payment* goes through Anthem.") (emphasis added). Thus, after peeling back the various labels used in the FAC and opposition, plaintiff's own allegations (and logic) show that the November 27, 2018 letter denied *payment*.

Plaintiff's reliance on the Fonseca declaration does not salvage the merit of its first counterargument. For starters, the Fonseca declaration is not properly before this court. Fonseca signed that declaration on May 17, 2021. Dkt. 26-2. Plaintiff filed its FAC on April 20, 2021. Dkt. 23. By definition, then, the FAC could not have incorporated Fonseca's declaration by reference. It did not exist.[1]

---

[1] On that basis, the court **GRANTS** defendant's motion to strike the Fonseca declaration. Dkt. 28. Given its conclusion on the statute of limitation defense, the court does not reach the merits of plaintiff's claims. In its opposition, plaintiff offers the website exhibit (Dkt. 26-3) only to support its claims' merits, *not* to refute the statute of limitations argument. Thus, the court need not decide whether the incorporation by reference doctrine permits this court to consider the statements on defendant's website. For that reason, the court **DENIES** defendant's motion to strike the website exhibit as moot.

8

But even if the court were to consider that declaration, Fonseca's discussion of the UB-04 forms generally used to communicate coverage decisions does not establish that an insurer may deny coverage *only* through such forms. Dkt. 26-2 ¶ 3. To the extent plaintiff argues that Vishva Dev requires a UB-04 form to communicate a denial, Dkt. 26 at 10, the court rejects that interpretation. The court in Vishva Dev did not articulate any rule about the type of document that an insurer must use to formalize its coverage decision. It simply found that, on the facts before it, the EOB notices served as sufficiently unequivocal written denials of payment.

That leaves only the Fonseca declaration's discussion of the healthcare industry's "retro-authorization" process. Dkt. 26-2 ¶ 6. Again, even if the court were to consider that discussion, plaintiff does not explain how the existence of such process (or the possibility that defendant would retroactively authorize coverage) changes the November 27, 2018 letter's clear statements denying coverage for the services at issue.

With respect to plaintiff's second counterargument, defendant aptly answers plaintiff's rhetorical question: defendant could deny the benefits requested without having reviewed the bill because plaintiff failed to obtain pre-treatment authorization. Dkt. 27 at 8. The November 27, 2018 letter validates that answer. Dkt. 24-2 at 7 ("This letter confirms that New Directions is denying benefits for Inpatient treatment provided on . . . Our information indicates: Pre-certification for the care request was not obtained as required in the member's benefit plan."). When pressed at oral argument, plaintiff itself ceded that defendant is not required to wait until plaintiff submits a claim for defendant to deny coverage.

Plaintiff's third counterargument similarly lacks merit. Critically, plaintiff does not allege that defendant required plaintiff to appeal the November 27, 2018 letter's decision. The November 27, 2018 letter itself also does not include any such requirement. Instead, that letter indicates only that plaintiff may appeal its decision. Dkt. 24-2 at 7 ("If you, a representative, or the attending physician chooses to appeal this decision, the appeal may be submitted by fax . . ."). As explained by the court in Vishva Dev, an insurer's

1 provision of a voluntary appeals process as part of a denial "does not change the finality" of that denial. 2 Cal. App. 5th at 1225. Thus, plaintiff may not rely on any appeal following the November 27, 2018 letter as a basis to toll the statute of limitations. Id. (rejecting the provider's theory of tolling pending an appeal on grounds that "any party engaging in an insurance company's optional appeal process could continuously toll the statute of limitations, thereby rendering it a nullity.").

\* \* \*

In short, the court finds that the November 27, 2018 letter unequivocally denied plaintiff's request that defendant pay for the services that plaintiff rendered to T.H during the period in question. That letter triggered the statute of limitations on plaintiff's claims, thereby requiring plaintiff to file suit by November 27, 2020. Plaintiff filed suit on January 22, 2021. Plaintiff's claims are therefore barred by the statute of limitations.

## CONCLUSION

For the above reasons, the court **GRANTS** defendant's motion to dismiss. Because plaintiff does not explain how it can alter the viability of the statute of limitations defense by amendment, the court will dismiss its claims **WITH PREJUDICE**. The court also **GRANTS** defendant's motion to strike with respect to the Fonseca declaration (Dkt. 26-2) and **DENIES** that motion as moot with respect to the remaining materials.

**IT IS SO ORDERED.**

Dated: July 13, 2021

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge